## Hibberd v. Edwards, Appellant.

*Deed—Building restriction—Offensive purpose or occupation—Public garage.*

A building restriction in a deed which forbids the erection upon the land of "any tavern, drinking saloon, steam mill, tannery, slaughter-house, skin-dressing establishment, glue, soap, candle or starch factory, or other building for offensive purpose or occupation," is broad enough to include a public garage for the hire, storage and repair of automobiles and the furnishing of such supplies as they may need.

Argued Feb. 6, 1912. Appeal, No. 257, Jan. T., 1911, by defendant from decree of C. P. Chester Co., No. 546, in equity in case of Joshua E. Hibberd et al. v. Ralph Edwards. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.

HEMPHILL, P. J., filed the following opinion:

### FINDINGS OF FACT.

The defendant, who is now the lessee of a small garage located on the Lancaster pike in the village of Paoli about one hundred feet west of where the Valley road crosses said pike, has purchased an "L" shaped lot with a frontage of fifty feet on the Lancaster pike, by one hundred and eighty feet deep, and of ten feet frontage on the Valley road; that on the pike being about one hundred and seventeen feet west of said road; and proposes and has commenced the erection of a large (46 ft. x 70 ft.) garage, with over six times the capacity of the one he now occupies.

In the proposed, as in the present, garage the defendant intends to conduct a business for the hire, storage and repair of automobiles, and furnishing of such supplies as they may need, and as the automobile travel along the pike is large, and especially so on Saturday afternoons and Sundays, will bring many to his garage for

repairs, and for gasoline, oil and other supplies. The stopping and starting of these machines is attended with more or less noise, depending upon the care and skill of the chauffeur, and [some of the repairs are necessarily attended with considerable noise, in the testing of the engines and in obtaining what is called the proper mixture, the latter causing loud explosions.

The conduct of the business is also attended with more or less smoke and unpleasant odors.]

[All of the witnesses, excepting two or perhaps three of the defendant's, testified that there were such noises, smoke and odor emitted from defendant's present garage, differing only as to the degree of offensiveness and the distance of the surroundings affected or that they reached.

The noises and odors while not continuous or permanent are frequent, excepting at night and on Sundays, when defendant limits his business to what he calls emergency work and the furnishing of supplies.]

[The noises are variously described as "a series of rapid explosions"—"noise of running machinery and pounding and banging"—"the gas engine exploding and snapping and cracking"—"frequent explosions  *  *  * like a heavy cannon cracker," etc., and the odor as "smoke of the burning gasoline with oil smells more or less quite offensively—"

"Sometimes there is a heavy smoke"—"The odor of gasoline"—"a great deal of odor"—"a great deal of smoke," etc.]

The defendant, however, claims that these objectionable features of his business will be put an end to or minimized in the new and enlarged garage, because he will then be able to do all his work in an enclosed building, instead as now much of it outside, excepting in the summer time, when it will be necessary to have the large doors (front and back) and the widows open.

But it is in summer, when houses are thrown open, and porches and grounds more used, that residents are and

will be most annoyed and the enjoyment of their homes interfered with, than at any other season of the year.

Messrs. Hibberd, Sinnickson, Shunk, Matthews, Glisson, Harry Davis and Hogue, witnesses called by the plaintiffs, all reside in close proximity to the present garage and about the same distance from the lot upon which defendant proposes to erect the new one; and testify from actual personal knowledge and experience, and agree that the noise and odors emitted from the present garage is offensive and disagreeable and interferes with the comfort and ejoyment of their homes.

On the other hand, Messrs. McAllister and Miller, called by defendant—the former living in the garage building and the latter in the fire engine house, near by,—both testified that they did not consider the noise and odors emanating from the garage offensive.

The remaining witnesses for both plaintiff and defendant, who testified on this subject, spoke not from actual knowledge and experience, but from observations made when passing or casually visiting the garage, and from their acquantance with the construction, care and operation of automobiles—giving what is sometimes called—judgment or opinion evidence.

[The weight of the testimony, however, so strongly substantiates the contention of the plaintiffs, that we have no doubt that the present garage is and the proposed would be offensive, and mar the comfort and enjoyment of those homes located in the immediate vicinity—and we so find.]

Now the properties owned or occupied by the plaintiffs and defendant were originally a part of a large tract of 348 acres of land owned by the Paoli Heights Land Company and were conveyed to the present owners under and subject, inter alia, to like conditions, and restrictions as set forth in the deed to the defendant, to wit:

"And the said Ralph Edwards, his heirs and assigns, owners and occupiers of the said tract of ground, shall

not at any time hereafter, erect or build or cause, suffer or permit to be erected or built, upon the hereby granted tract of land, or any part thereof any tavern, drinking saloon, steam mill, tannery, slaughter house, skin dressing establishment, glue, soap, candle or starch factory, or other building for offensive purpose or occupation; nor cause, suffer or permit any building erected on said tract of land to be converted into a tavern, drinking saloon, steam mill, tannery, slaughter house, skin dressing establishment, glue, soap, candle or starch manuactory, or used for any offensive purpose or occupation hereafter forever."

When J. Roberts Foulke, defendant's grantor, learned that opposition to the erection of a garage had developed, and it was claimed would be a violation of the above restriction, he offered Mr. Edwards to take back the lot and refund to him the purchase money—and is still willing to do so.

CONCLUSIONS OF LAW.

The restriction above quoted is not a residential restriction—limiting the property to residential uses, nor is it intended to be, but to guard and protect residences and inoffensive business places from the annoyance, discomfort and inconvenience of offensive establishments, such as are enumerated and others of like character. And in applying the restriction to trades, occupations and establishments other than those specifically prohibited must be given a reasonable and fair construction.

If the noise and odors were slight and infrequent and such as would only annoy and disturb a supersensative or highly nervous person it would be unfair to hold that the business or occupation came within the restriction; while on the other hand it would be equally unfair to hold that it was only applicable when they reached that degree that would annoy and disturb persons accus-

tomed to noise and unpleasant odors by reason of their occupation or business.

The test should be the effect upon the normal and rational man.

[Exclusive of the taverns and drinking saloons, the remaining enumerated occupations or businesses may be divided into two classes, the noisy and the malodorous and both are designated as offensive.]

[Now from the great preponderance of the testimony it seems clear to us, that a garage is of necessity, both noisy and malodorous, not to the same degree or extent as some of the specifically prohibited occupations, but sufficient to annoy and disturb the witnesses of the plaintiffs, apparently normal and rational men, in the quiet and comfortable enjoyment of their homes.]

The law as to what constitutes a noisy nuisance was carefully considered and received by Judge THAYER (and his opinion was adopted by the Supreme Court) in Ladies' Decorative Art Club's App., 22 W. N. C. 75, and in that opinion cites approving the language of Sir George Jessel, Master of the Rolls, in Broder v. Saillard (L. R. 2 Ch. Div. 692) : "If there were no authority on the question, I should have felt no difficulty about it, because, I take it the law is this, that a man is entitled to the comfortable enjoyment of his dwelling house. If his neighbor make such a noise as to interfere with the ordinary use and enjoyment of his dwelling house, so as to cause serious annoyance and disturbance, the occupier of the dwelling house is entitled to be protected from it. It is no answer to say that the defendant is only making a reasonable use of his property, because there are many trades and many occupations which are not only reasonable but necessary to be followed, and which still cannot be allowed in the proximity of dwelling houses, so as to interfere with the comfort of their inhabitants."

Entertaining the views above expressed [we must order and direct that the preliminary injunction be made

perpetual as prayed for in plaintiffs' bill, and that the
defendant pay costs.]

*Errors assigned* were various findings of fact and law
and decree making preliminary injunction perpetual.

*R. Mason Lisle* and *Gheen & Parke,* for appellant.—
The garage in question is not a nuisance per se: Rich-
ards' Appeal, 57 Pa. 105; Rhodes v. Dunbar, 57 Pa. 274;
Huckenstine's Appeal, 70 Pa. 102; Dilworth's Appeal, 91
Pa. 247; Robb v. Carnegie, 145 Pa. 324; Sullivan v.
Steel Co., 208 Pa. 540.

The garage is not within the restriction: Orne v.
Fridenberg, 143 Pa. 487; Landell v. Hamilton, 175 Pa.
327; Sayers v. Collyer, L. R. 24 Ch. Div. 180.

*A. M. Holding,* with him *D. P. Hibberd,* for appellees.
—It is not in the power of any owner of a servient lot to
violate the restriction, without the consent of the owners
of the dominant lots: Hansell v. Downing, 17 Pa. Super.
Ct. 235.

If the contemplated business of the appellant is a vio-
lation of the covenants mentioned, then equity will re-
strain him: Yeaton's Appeal, 105 Pa. 125; St. Andrew
Church's Appeal, 67 Pa. 512; Hansell v. Downing, 17
Pa. Super. Ct. 235; Ogontz Land & Imp. Co. v. Johnson,
168 Pa. 178; Gatzmer v. St. Vincent School Society, 147
Pa. 313; Landell v. Hamilton, 175 Pa. 327; Rowland v.
Miller, 139 N. Y. 93 (34 N. E. Repr. 765); St. Andrew
Church's App., 67 Pa. 512; Evans v. Foss, 194 Mass. 513
(80 N. E. Repr. 587).

PER CURIAM, March 18, 1912:
The decree is affirmed on the findings of facts and con-
clusions of law by Judge HEMPHILL.