# Tyson et al. *v.* Coder, Appellant.

*Equity—Injunction—Nuisance—Automobile garage.*

The erection of an automobile garage in an exclusively residential district is properly enjoined, where there was evidence that the business to be carried on was of such a nature that the comfort and quiet of the householder and of the public passing along the street would be disturbed.

It may be considered as a settled principle of equity that the business of maintaining a public service garage in a municipal neighborhood, exclusively residential, will be enjoined where such business is shown to be destructive or prejudicial to the quiet and orderly condition of the neighborhood and the comfort and enjoyment of the residents in the vicinity, because of noise, offensive odors and the obstruction of the streets and footways incident to the business proposed to be carried on.

An occupation which produces annoying noises or offensive odors, which might be carried on without legal impediment in some localities, will not be admitted in a residential district against the objection of persons living there.

*Equity—Findings of fact—Conclusiveness.*

The findings of fact of a judge which involve the credibility of witnesses and the weight to be given that testimony will be given the effect of a verdict of a jury, and will not be disturbed where there is testimony to support them.

Argued March 12, 1924. Appeal, No. 95, Oct. T., 1923, by defendant, from judgment and decree of C. P. Huntingdon County, Sept. T., 1921, No. 244, sitting in equity, awarding an injunction in the case of W. S. Tyson, Fanny S. Miller and F. L. Schum v. J. Coy Coder. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Bill in equity to restrain the erection of a public automobile garage. Before BARNETT, P. J., 41st Judicial District, specially presiding.

The facts are stated in the opinion of the Superior Court and in the following opinion of the court below granting an injunction:

This is a proceeding in equity to enjoin the erection and maintenance of a large public garage on Penn Street, between Third and Fourth streets, in the borough of Huntingdon. The bill was filed by W. S. Tyson, Fannie S. Miller and F. L. Schum, for themselves and on behalf of other residents of the neighborhood in which the garage is to be erected who may desire to join in the action. Subsequently the names of George G. Steel, Joseph F. Biddle, E. S. McMurtrie, Alice E. Kinsel, Harry W. Read, Mrs. Eph. Thompson, Abram Reed, R. Guisler, Mrs. M. P. Denithorne and Miss N. V. Zeigler were added to the record as parties plaintiff. The case was heard July 7th and 8th and August 8, 1921, on bill, answer, replication and proofs. We have made a personal inspection of the intended location of the garage, and the immediate and surrounding neighborhood.

1. The Borough of Huntingdon is the county seat of Huntingdon County and had in 1920 a population of 7,051. Penn Street, running east and west, is the principal street of the borough and is a part of the William Penn Highway, which is the only public thoroughfare traversing the borough and connecting it with other towns and cities of the State. Running parallel with Penn Street are Washington Street, on the north, and Allegheny Street, on the south. These streets are crossed at right-angles by Third Street, east, and Fourth Street, west of the blocks immediately involved in this proceeding.

2. Penn Street, between Third and Fourth streets, is a residential street, not exclusively but preponderantly, and is more nearly a strictly and exclusive residential section than any other part of the borough. Many of the most modern and expensive dwellings in the town are on this section of Penn Street, or in the immediate vicinity. The buildings which are not used solely as resi-

dences, with few exceptions, are occupied in part as offices by lawyers, doctors, and others whose business causes no offense to the peace and quiet of the neighborhood. These offices, in almost every instance, are on the first floor front of buildings which are otherwise occupied as residences. The exceptions are (1) a bootblack stand at Fourth Street, on the north side of Penn Street; east of it, (2) the display rooms of the Wright-Nash Sales Company, in which from two to five automobiles are kept for sale, and in front of which is a gasoline and air station for automobiles; adjoining is (3) a large brick building occupied by the Order of Elks; and farther east and on the same side of the street, (4) a building in which are contained on the first floor, in front, the offices of a local newspaper, and in the rear its presses, while the second and third floors are used as apartments. The street is closely built up on both sides from Third Street to Fourth.

3. Allegheny Street, between Third and Fourth, is not so closely built up, has on it three or four residences, three hotels, an express office, the Moose Home, a club. house, and several small garages for the storage of private cars, usually those of Penn Street residents.

4. East of Third Street, on the north side of Penn Street, is the courthouse, which is approached from the central part of the town, the hotels and railroad station, by Penn Street, through the second under discussion. Opposite the courthouse, on the south side of Penn Street, is the Episcopal church.

5. The main line of the Pennsylvania Railroad runs parallel with Allegheny Street, the distance from the north side of the street to the nearest track being estimated at one hundred and fifty feet.

6. All of the plaintiffs and intervening plaintiffs own and occupy residences on Penn Street, between Third and Fourth, except three, who own homes on Allegheny Street.

7. In the vicinity here involved are no coal yards, wholesale business houses, factories, mills, or other establishments of a character annoying or offensive to the residents, except as any of those mentioned in paragraphs two, three and five may in any degree be so considered.

8. The defendant has contracted to purchase a lot of ground fronting fifty feet on Penn Street, extending south and with uniform width two hundred feet to Allegheny Street upon which it has the same frontage. The lot is located between Third and Fourth streets at about the middle of the block. It has erected upon it a large frame building now in a neglected condition, but until recently used as a residence, with offices on the first floor next to Penn Street. The defendant's purpose is to remove the existing structure and erect upon the lot, covering its entire area, a building of concrete, tile, brick and steel, to be used as a public service garage, for the repair, storage and sale of automobiles. The building is designed to have two stories, both above the level of Allegheny Street, only the upper one appearing on Penn Street, to which the lower is to extend as a basement. The lower floor, opening on Allegheny Street, is to be used only for storage, with accommodation for from fifty to eighty-seven cars. The upper story, with entrance from Penn Street, is to have storage room for from thirty-six to seventy-two cars, and is to contain a large machine shop for repair work, a blacksmith shop or forge room for welding, and display rooms next the street. Ventilators are to be provided to carry off fumes and gases, and a new exhaust device installed for the purpose of muffling the noise caused by the testing of engines. The defendant is noncommittal as to his intentions respecting the storage and sale of gasoline and oils.

9. If the proposed garage is erected and operated according to the plans, there will necessarily be noises, smoke, odors, and dangers. Automobiles will be passing

in and out of both the Penn Street and the Allegheny Street entrances to the building intermittently by day and by night; cars will be starting, stopping, and standing at and in the neighborhood of each entrance; there will be the more or less continuous sounding of horns, noise and confusion; there will be pounding upon metal, replacing of tires; adjusting of carburetors; testing of engines at various rates of speed; speeding and racing motors, with the accompanying explosions and noise; the odor of burning gasoline and of the smoke frequently emitted from motors in need of attention. All of which would seriously interfere with the peaceful enjoyment of the plaintiffs' homes, reduce the values of their respective properties for the purpose for which they were bought and are owned and used, and impose additional burdens upon the properties in the neighborhood.

10. The maintenance of a public service garage upon the block bounded by Third, Penn, Fourth, and Allegheny streets would be prejudicial to the welfare, comfort, safety and peace of the plaintiffs and other persons residing in the immediate vicinity, to the safety of jurors, suitors, witnesses and others going to and from the courthouse, and of persons attending the Episcopal church.

"A public garage has been determined to be a nuisance in a residential district, and this would be the case whether it was in violation of a building restriction or an annoyance to the general community: Prendergast v. Walls, 257 Pa. 547; Hibberd v. Edwards, 235 Pa. 454; Hohl v. Modell, 264 Pa. 516. But such garage would not be a nuisance in a section devoted to business purposes. Between these two zones there may be some uncertainty": Phillips v. Donaldson, 269 Pa. 244; Phillips v. Dunseith, 269 Pa. 251. There can be no uncertainty as to which of the two zones the district here involved should be placed in. Although it is not purely residential it is practically so. It contains no business establishment which seriously affects the safety, peace and quiet which are the distinguishing characteristics of such a neighbor-

hood.  There can be no uncertainty, therefore, as to the application of the rule, which seems to be now settled, that a public garage in a residential district is a nuisance.  The defendant's plans, as outlined by him in his testimony, contemplate the construction and maintenance of a garage in such manner as to eliminate so far as possible its offensive character.  With ample means and the best intentions he might mitigate some of the annoyances incident to his business, but he could not hope entirely to overcome them.  The rule, however, which excludes garages from residential sections, is not restricted to such as are badly constructed and carelessly managed.  It applies to all such establishments in such communities.

According to the defendant's own testimony the erection of his garage would be the beginning of an invasion of the district.  "If I win out in this case," he said, "I know of others that are contemplating building garages in the same part of this town."  If the plaintiffs are to be protected by law from successive encroachments upon their enjoyment of the accustomed quiet and comfort of their homes, the remedies must be applied now.

### CONCLUSIONS OF LAW.

1. The maintenance of the defendant's garage, as proposed by him, would be a nuisance against which the plaintiffs are entitled to equitable relief.

2. The plaintiffs are entitled to an injunction perpetually restraining the defendant from the erection and maintenance of a public garage upon the lot abutting on Penn and Allegheny streets, between Third and Fourth streets, which he has contracted to purchase.

3. The costs of this proceeding must be paid by the defendant.

And now, September 30, 1921, this cause came on to be heard at this term and was argued by counsel, and upon consideration thereof, it is ordered that counsel

prepare and submit a decree in accordance with the foregoing opinion.

*Error assigned* was, among others, the decree of the court.

*William Wallace Chisolm,* for appellant.

*R. W. Williamson,* and with him *H. H. Waite,* for appellee.

OPINION BY HENDERSON, J., May 5, 1924:

The principle on which the complainants rely has its foundation in the familiar rule that everyone must so use his property as not to injure another. It has been applied in many cases relating to the bringing of an offensive and injurious business into a populous neighborhood, and especially to a locality which may be regarded as residential as distinguished from a district devoted to manufacturing, or other business. The cases of Broder v. Saillard, L. R. 2, Ch. Div. 692, and Ball v. Ray, L. R. 8, Ch. App. 471, illustrate the attitude of the English courts on the subject and the same rule has been adopted in this country. It is sometimes difficult to determine whether the facts bring the case within the rule, but it may be considered an established principle that many kinds of business, useful and even necessary in a populous district and not in themselves nuisances, are so regarded in the light of the circumstances of the neighborhood in which it is proposed to establish them, and the rule is more readily applied where the business has not been established than where it has been conducted for a long period. An occupation which produces annoying noises or offensive odors may be carried on without legal impediment in some localities which would not be admitted into a residential district against the objection of persons living there. It has been accordingly held that a restriction in a deed for land for-

bidding the erection thereon of "any tavern, drinking saloon, steam mill, tannery, slaughterhouse, skin-dressing establishment, glue, soap, candle or starch factory, or other building for offensive purpose or occupation" is applicable to a proposed public service garage to be used for the hire, storage and repair of automobiles, and furnishing of such supplies as they may need where the evidence shows that noises and offensive odors are an accompaniment of such an establishment: Hibberd v. Edwards, 235 Pa. 454. But the prohibition is not limited to cases of a restriction against nuisances in a deed. It has been enforced against the erection of a public garage in a residential neighborhood because of the character of the neighborhood and the nature of the business proposed to be conducted, the doctrine being that a neighborhood which has been preëmpted by the construction of residences and is adapted to that use is entitled to protection against the introduction of a business which would subject the residents to discomfort, inconvenience, risk and depreciation of property resulting from the prosecution of such business: Prendergast et al. v. Walls et al., 257 Pa. 547. The principle stated in the case cited was reaffirmed in Hohl et al. v. Modell, 264 Pa. 516, where it was said by Justice WALLING "equity may restrain as a nuisance the operation of a public service garage in an exclusively residence section, aside from any building restriction."

The same question was considered by the Supreme Court in an opinion filed April 14, 1924, William H. Slingluff et al. v. Daniel L. Tyson, where the law was restated to the same effect, the conclusion being that the operation of a public garage in a residential neighborhood should be restrained as a public nuisance. The business proposed to be carried on, with respect to which the latter decision was rendered, was much less extensive and less liable to become noxious than that in the case before us but it was held that the magnitude of the business did not affect the application of the equitable

principle invoked. It may be considered as a settled principle of equity therefore that the business of maintaining a public service garage in a municipal neighborhood exclusively residential will be restrained where such business is shown to be destructive of or prejudicial to the quiet and orderly condition of the neighborhood and the comfort and enjoyment of occupants of the residences in the vicinity because of noises, offensive odors, and the obstruction of the streets and footways incident to the business proposed to be carried on.

The learned trial judge found the facts in the case substantially as developed in Prendergast v. Walls, and on that finding the decree was entered. There was evidence supporting the decree and the testimony of witnesses that the locality where the defendant proposed to erect his building was substantially a resident district, the most exclusively so in the opinion of the trial judge to be found in the borough. There was evidence descriptive of the kind of business carried on in such establishments and to show by the nature of the business and the locality where it is proposed to be carried on that the comfort and quiet of the householder and of the public passing along the street would be much disturbed. The evidence shows that there was to be a machine shop, a repair shop, a storage for 150 cars or more provided for. The building proposed would be 50 feet in width and 200 feet in length, having two stories, both devoted to the garage business. There was foundation therefore for the findings of fact made by the court. That being so the case is ruled by Eppsteiner v. Ismar, 239 Pa. 393, and Cruzan v. Cruzan, 243 Pa 165, each of which cases was a proceeding in equity, in both of which it was held that "the findings of fact by a judge, which involve the credibility of witnesses and the weight to be given their testimony, will be given the effect of a verdict of a jury and they will not be disturbed where there is testimony to support them." An effort was made by the complainant to show that if his garage were erected it would be con-

116, (1924).]        Opinion of the Court.

ducted in a less objectionable manner than one which he has been keeping in the same town; the new building making it practicable to avoid noise and odors to a large degree.  But the court did not consider this evidence to be of weight sufficient to overcome the testimony and common knowledge relating to the kind of business necessarily carried on in a large garage devoted as well to car repairs, motor adjustments, etc., as to the storage of cars coming and going on a public highway.  It was shown that Penn Street is only 29 feet in width between curbs, and the court was warranted in the inference that the volume of business transacted in the garage from that street would obstruct the thoroughfare and subject persons walking on the sidewalk to inconvenience and risk.  It further appeared from the evidence of the defendant that if he succeeded in locating his garage other persons intended to engage in the same business in the same vicinity, thereby aggravating the objectionable conditions.  The burden resting on the appellant to overcome the findings of fact by the court we are unable to conclude from our examination of the case that this burden has been discharged.

The decree is affirmed at the cost of the appellant.