## Hammann et al. v. Painter et al.

Charles R. Mallery and J. Lee Plummer, for plaintiffs.

J. F. Sullivan and G. Nevin Dively, for defendants.

PATTERSON, P. J., Feb. 21, 1929.—On Sept. 4, 1928, the plaintiffs filed this bill, praying for an injunction restraining defendants from constructing and operating a public service gasoline and filling station on a lot of ground owned by the defendants, situate at Fourth Street between Twenty-fifth Avenue and Wopsononock Avenue in the City of Altoona, alleging that this immediate vicinity is exclusively residential in character. On Oct. 1, 1928, defendants filed their answer to said bill, wherein they admit that they intend to construct and operate upon said premises, as described in plaintiffs' bill, a public gasoline station for the retail sale of gasoline and oils, and deny that the immediate neighborhood surrounding the place where the proposed service and filling station is to be erected is exclusively residential in character; that the neighborhood is not an entirely built-up neighborhood, and that many lots are vacant and unimproved. Thereafter, the evidence of many witnesses on both sides was heard by the court and the same transcribed and filed to this case.

### Findings of fact.

1. That twenty-two of the plaintiffs own and occupy, for residence purposes, real estate in the City of Altoona in the immediate vicinity of the proposed gasoline station, and two of the plaintiffs occupy, as tenants, real estate in the immediate vicinity.

2. That the defendants own a lot of ground, situate between Twenty-fifth Avenue and Wopsononock Avenue, said lot of ground fronting 84.8 feet on the southwestern side of Fourth Street, and extending back therefrom along Wopsononock Avenue in a southeasterly direction a distance of 52.2 feet, and thence along line of Lot No. 7, Block "B," a distance of 106.17 feet to Twenty-fifth Avenue, and thence in a northeasterly direction along said Twenty-fifth Avenue 50 feet to Fourth Street, the place of beginning.

3. That the defendants intend to construct and operate upon said lot a public service station for the retail sale of gasoline and oils for automobiles.

4. That the immediate neighborhood surrounding the proposed service station is exclusively residential in character and no public business whatever is being conducted in that part of the city.

5. That some years ago a railroad, known as the Wopsononock Railroad, passed through the lands in close proximity to the lot upon which it is proposed to construct a public gasoline filling station, but this road has been abandoned and removed and some of the plaintiffs own and reside in houses built upon land which was formerly occupied as a right of way for said railroad.

6. That at the time of the operation of said railroad the land in the immediate vicinity of the proposed station was vacant and unoccupied except by said railroad. That since the removal of the railroad, the occupancy of said

lands has completely changed. That in the past few years many new residences have been constructed, and are now occupied by their owners, on lands that were but recently vacant fields. That the only other buildings under construction or about to be constructed are two churches, St. Theresa's Roman Catholic Church, being situate on Wopsononock Avenue, a distance of 130 feet from the site of the proposed gasoline filling station, and a lot on Wopsononock Avenue, a distance of 60 feet from the site of the proposed gasoline station, upon which the congregation of the Emanuel Evangelical Church propose to erect a church building.

7. That there is no business now being conducted in this immediate vicinity and no evidence of any business ever having been conducted in close proximity thereto except the remains of an abandoned coal tipple, used when the railroad existed, and a small frame building that was once occupied as a bakery or pastry shop. And that there are no grocery or other stores, manufacturing plants, offices, laundries or other business located within this immediate vicinity.

*Discussion.*

Under the decisions of the appellate courts, there is but one question for determination, and this is a question of fact: Is the immediate neighborhood where the intended filling station is to be erected predominantly residential in character? This question must be answered in favor of the plaintiffs.

It is true there are vacant lots near by, but this fact is not inconsistent with the conclusion that the neighborhood is residential in character. In Eckels v. Weibley, 232 Pa. 547, it is held: "The injunction appealed from followed findings by the court below that the defendants were about to engage in the horse and cattle business in an exclusively residential section . . . but not yet compactly built up."

It is only a few years since all of the land in the immediate vicinity was vacant except as it was occupied by the abandoned railroad. The plaintiffs and other persons desiring an exclusively residential section became owners of lots upon which they have erected homes and now occupy the same. No buildings for any other purposes than residence and church purposes have been constructed within said immediate neighborhood. And it is evident from an examination of all the testimony and from observation on the ground that the character of the immediate neighborhood has been established with certainty by the character of the buildings so erected. We are, therefore, bound to come to but one conclusion, and that is that the immediate neighborhood surrounding the proposed gasoline station is not only predominantly residential but exclusively residential in character. The only argument against this conclusion is that there are vacant lots—not that there are industrial plants or other business establishments being conducted there. We think, however, that the fact that there are vacant lots has no bearing on the question of the occupancy of the land in the immediate vicinity of the station. Its occupancy is residential, as evidenced by the many homes occupied by their owners.

In the very recent opinion of the Supreme Court in Burke et al. v. Hollinger, dated Feb. 4, 1929, opinion by Mr. Justice Kephart [296 Pa. 510], it is held:

"We have never attempted to state what an exclusively or predominantly residential district should consist of, nor can it be accurately done. What is here suggested is the types of uses that may constitute a given district. In certain aspects these may control and by the uses stated not only may the application of the rule above announced in our decided cases be properly gauged but some idea may be given for future action.

"A district composed of one-family dwellings, churches, library, with an occasional grocery store, doctors' or lawyers' offices in homes, would unquestionably compose an exclusively residential district; and such accessory uses as private garages, stables or necessary out-buildings for the comfort or enjoyment of the premises would not affect its exclusive character. A second type of residential district, closely resembling the one referred to, but not so exclusive, is one having, in addition to the above uses, the following: Double-houses, schools, public or private, gardens, with their accessory uses. In each of the foregoing classes our previously established rule as to public garages unquestionably applies. . . . .

"In applying the rules here stated, the courts will be careful to note that in small cities and boroughs business and residence closely interlock, and, in determining the residential character of a locality, of which that considered in Tyson v. Coder, 83 Pa. Superior Ct. 116, is a type, they will be guided by the considerations so well expressed there and preserve the home-dwellers from the intrusion of business which destroys peace, comfort and enjoyment as well as property value. The reasons mentioned as controlling in a city are not to be found in such places."

The case under consideration differs from all of the reported cases in one respect, and that is, it is a new development, having new houses and new streets, while all of the reported cases deal with locations on streets that have been occupied for a longer time for either business or residential purposes, or both. We think, however, that the character of the occupancy of a new section may be more readily determined than that of an older part of a city. Especially is this true in the present case, where there are numerous dwelling-houses and no grocery stores, doctors' offices or other business or professional places of any kind.

In Tyson v. Coder, supra, it is held: "But the prohibition is not limited to cases of a restriction against nuisances in a deed. It has been enforced against the erection of a public garage in a residential neighborhood because of the character of the neighborhood and the nature of the business proposed to be conducted, the doctrine being that a neighborhood which has been pre-empted by the construction of residences and is adapted to that use is entitled to protection against the introduction of a business which would subject the residents to discomfort, inconvenience, risk and depreciation of property resulting from the prosecution of such business."

This principle is supported also by Prendergast et al. v. Walls et al., 257 Pa. 547; Hohl et al. v. Modell, 264 Pa. 516; Slingluff et al. v. Tyson, 280 Pa. 206.

The foregoing cases also hold that it is now well established in Pennsylvania that a public garage, though not a nuisance per se, becomes such, in fact, when conducted in a residential neighborhood. And the same rule applies to both public filling stations and public garages: Carney et al. v. Penn Oil Co., 291 Pa. 371.

### Conclusions of law.

1. The operating and maintaining of the public gasoline filling station as proposed by defendants would be a nuisance against which the plaintiffs are entitled to equitable relief.

2. The plaintiffs are entitled to an injunction perpetually restraining the defendants from the erection, maintenance and operation of a public gasoline filling station upon the lot of ground fronting 84.6 feet on the southwesterly side of Fourth Street between Twenty-fifth Avenue and Wopsononock Ave-

780

nue in the City of Altoona, which they have purchased for the purpose of constructing and maintaining a public service gasoline filling station.

3. The cost of this proceeding to be paid by the defendants.

### Decree nisi.

And now, Feb. 21, 1929, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows: That an injunction be issued perpetually restraining and enjoining the defendants, together with their agents, servants and employees, from establishing, maintaining and operating a public service gasoline and oil filling station on the lot of ground situate on the southwest corner of Twenty-fifth Avenue and Fourth Street, extending southeastwardly from the southeastern side of Twenty-fifth Avenue along the southwestern side of Fourth Street to Wopsononock Avenue, being premises numbered 401-403 Twenty-fifth Avenue, in the City of Altoona. And defendants are directed to pay the costs of this proceeding. The prothonotary is directed to file this opinion and enter the foregoing decree nisi and give notice to the parties or their counsel of record of the entry of the decree, as provided in Rule 68 of Rules of Equity Practice, as adopted by the Supreme Court of Pennsylvania.                    From Robert W. Smith, Hollidaysburg, Pa.