# Prendergast et al. v. Walls et al., Appellants.

*Nuisances—Garage—Residential district—Proximity of churches and school—Bill in equity—Injunction.*

On the hearing of a bill in equity to enjoin the operation of a public service garage in a residential district, an injunction was properly awarded where it appeared that the locality was exclusively residential in character, that the garage was within a short distance of imposing churches, valuable homes and a parochial school, and the chancellor found that the garage would necessarily create noises, odors and dangers, and interfere with the church services,

would be dangerous to the school children, would reduce the values of property surrounding the garage and tend to the removal of persons living in the neighborhood, and would increase the rates of insurance; and further that defendants had been notified that the erection of such garage in the locality would be opposed.

Argued March 22, 1917.  Appeal, No. 63, Jan. T., 1917, by defendants, from decree of C. P. No. 2, Philadelphia Co., Sept. T., 1916, No. 2748, in equity, granting injunction restraining erection and maintenance of garage in case of Most Rev. Edmond F. Prendergast, Anne W. Penfield, Samuel Castner, Jr., Charles W. Naulty, James F. Conway, the Rector, the Church Wardens and Vestry of the Protestant Episcopal Church of the Saviour, Meredith Hanna, Rev. and Mrs. C. E. Milner, William G. Hopper, Mr. and Mrs. McDonald, Estate of Mary V. Hanna, and the Heirs of Isabella M. Howell, Deceased, v. Walter Walls, John H. Calahan, Jr., individually and as Trustee for Walter Walls, and Alexander Chambley.  Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ.  Affirmed.

Bill in equity for injunction restraining erection and maintenance of a nuisance.  Before WESSEL, J.

It appeared by the record that the defendants proposed to erect a one-story building for automobile garage purposes at the southwest corner of Thirty-eighth and Chestnut streets, in the City of Philadelphia.  The complainants were the owners of property in the neighborhood.

The essential facts appear in the sixteenth, twenty-first, twenty-second and twenty-third findings of fact by the chancellor as follows:

"16. The neighborhood immediately surrounding the place where the proposed garage is to be erected is exclusively residential in character.  It is exceptionally quiet, well adapted for persons desiring homes of modest size and within comparatively short distance from the central portion of the city.  Each of the said churches are imposing edifices of magnificent proportions and rep-

resent the expenditure of much labor and wealth. Nearly all of the houses in the region are modern in construction, some of them with extensive lawns, large and architecturally beautiful. There are no manufactories or factories in the immediate vicinity. The general conditions were aptly described by Mr. Carson when he testified that it was a 'serene, peaceful and delightful region for residences of people wishing to be near to the centre of the city who have a dislike for railroad trains or long rides on the elevated.' The sentiments inspired by their homes and their religious associations, the desire to preserve and protect their dear ones and those under their charge in the enjoyment of the peace and safety which they presently possess alone actuate the plaintiffs in the conduct of these proceedings. The defendants' motives do not appear of record. There are many less expensive locations in that vicinity on the market which could be used as a public service garage without constituting a nuisance and without injury to others."

"21. If this garage is erected and operated according to the plans and specifications, there will necessarily be noises, odors and dangers. Automobiles will be passing in and out of the said garage intermittently during the entire day and night; there will be pounding upon metals; testing of the engines at varying rates of speed to which will be incident the continuous explosions of gasoline in the motors of varied intensity; speeding and racing of motors. These noises will occur during the day and the night and would be heard for various distances, depending upon the then existing conditions; the odors from the gasoline and oils will be disagreeable and offensive; smoke will be emitted from the motors of the automobiles in varied quantities depending upon the kind of machines, the skill of the operator, the atmospheric and other conditions, all of which would be more or less noticeable in the immediate neighborhood and unpleasant to the persons with whom it came in contact. The entrance and exit of the automobiles over the Thirty-

eighth street pavement into the garage during the day and night will be dangerous to the pedestrians (especially the children) passing along those streets. It will ex necessitate (particularly in winter) the more or less continuous sounding of horns, noise and confusion. All of these matters would seriously and permanently interfere with the peaceful enjoyment of the plaintiffs' homes and the residences of the tenants of the properties belonging to the plaintiff Penfield; the lives and safety of the children attending the parochial schools would be endangered; the worshipping in the several churches hereinbefore specifically mentioned, more particularly the St. James's Church, would be seriously interfered with; the beauty of the services marred. The conduct of the garage would result in the congregating of a number of persons in and about the property. This would have a pernicious effect upon the children who pass and repass the garage. The storage of five hundred gallons of gasoline in the ground (the top of the tank being two feet below the ground); the storage of the automobiles; the keeping of the quantities of oils necessary for the operation and lubrication of the automobiles; smoking by attendants and others; the use of electric current near the gasoline and oils; the adjusting of carburetors; replacing of tires; moving and washing of the cars at night; back-fire of motor cars, explosions of gasoline, will all result in added danger from conflagration. All of which will have the effect of reducing the values of the properties surrounding the garage and will tend to the removal of the tenants presently living in the neighborhood. It will increase the rates of insurance; will impose additional burdens upon the surrounding properties and will decrease the net return therefrom.

"22. Defendants were duly notified that the erection and maintenance of a garage upon the premises mentioned would be objected to and that proceedings would be instituted to restrain such erection.

"23. The maintenance of a public service garage at the

southwest corner of Thirty-eighth and Chestnut streets will be a nuisance, distinctly prejudicial to the welfare, comfort, safety and peace of the persons residing in the immediate vicinity, to those attending the schools and to those worshipping in the said churches."

The chancellor reached the following conclusions of law:

1. Plaintiffs are entitled to the free use and enjoyment of their respective properties without undue interference by the defendants. To the extent to which such use is denied or interfered with by the defendants, they create a nuisance against which plaintiffs are entitled to equitable relief.

2. The maintenance of a public service garage at the southwest corner of Thirty-eighth and Chestnut streets will unreasonably and unduly interfere with the use and enjoyment by the plaintiffs of the properties respectively owned and leased by them.

3. Plaintiffs are entitled to an injunction perpetually restraining the defendants from maintaining a public service garage at the southwest corner of Thirty-eighth and Chestnut streets, in the City of Philadelphia.

The lower court entered a decree perpetually restraining defendants from maintaining or conducting a public service garage at the locality in question and placed the costs of the proceeding upon the defendant. Defendant appealed.

*Error assigned,* among others, was the decree of the court.

*James W. Laws* and *Elton J. Buckley,* with them *Frederick J. Geiger,* for appellants.

*Thomas Raeburn White* and *Hampton L. Carson,* with them *A. A. Hirst, Joseph Carson, John P. Connelly, Meredith Hanna, Frederick C. Newbourg, Jr.,* and *William B. Bodine, Jr.,* for appellees.

PER CURIAM, April 16, 1917:

This appeal is dismissed and the decree affirmed, at appellants' costs, on the sixteenth, twenty-first, twenty-second and twenty-third facts found by the learned chancellor below, which were followed by three correct legal conclusions.