## Feldman et al. v. The Empire Oil and Grease Company et al.

*Equity—Injunction—Gasoline station—Public street—Nuisance — Special injury—Fire hazard—Sounding of horns.*

1. In a suit to restrain the construction and operation of a gasoline-filling, oil, air and water-station along a city street, it appeared that the proposed structures would be located in front of the property-line between the curb and the sidewalk. Plaintiffs were owners of the adjoining property, a residence. The location was not strictly residential, but was at about the dividing-line between residential and business sections of the city: *Held*, the proposed station might constitute a public nuisance as an interference with public use of the street, but, if so, there was no proof of special injury, and a bill for injunction by an individual property owner would not lie.

2. Special injury is not established by evidence that the lights from automobiles seeking service at the proposed station would occasionally flash on plaintiffs' porch, or that the sounding of horns would be objectionable, or that the fire hazard to plaintiffs' property would be increased.

3. Special injury must be substantial and such as would be actionable.

4. The vending of gasoline is not an unlawful business, and does not, in and of itself, constitute a nuisance.

Bill for injunction. C. P. Venango Co., Aug. T., 1923, No. 4, in Equity.

*John L. McBride,* for plaintiffs.

*Breene & Jobson* and *P. A. Wilbert,* for defendants.

CRISWELL, J.—A preliminary injunction having issued in the above entitled case, a motion was made to continue the same until final hearing and the parties were heard thereon. Thereafter it was agreed by the parties that the testimony taken on such motion should be regarded as taken on final hearing. Accordingly, issue having been duly joined, from the bill, answer and evidence, the following are found as the material

### Facts.

1. The plaintiffs are the owners in fee of a lot in the City of Franklin, having a frontage of 100 feet facing the westerly side of Liberty Street, with a depth therefrom of 150 feet, upon which there is erected about twenty to twenty-five feet south of the north line thereof, back twenty feet from the line of the street, a three-story residence, with a frontage of thirty-five feet and a depth of seventy-five feet and a porch ten feet extending across the front thereof.

2. The defendant, William A. Sands, owns the lot adjoining plaintiffs' on the north. It has a frontage of 58.6 feet on the street and extends back there-

Feldman et al. *v.* The Empire Oil and Grease Company et al.

from the same depth as the plaintiffs' lot. On the northerly portion of this lot there is erected a two-story frame building, the first floor of which is used as a storeroom and the second as an apartment residence. South of this building is a one-story structure intended for store or business purposes, and still south of this building and adjacent with plaintiffs' lot is a space with a frontage of twelve or fifteen feet without buildings thereon.

3. By indenture bearing date June 7th, the said Sands leased to the defendant, W. W. Mortland, the room nearest to plaintiffs' lot, having a frontage of fifteen feet and a depth of forty-five feet, for a term of five years from the —— day of June, 1923, with the use of the entire front of his premises as may be permitted by the City of Franklin and the lessee of the other building thereon.

4. Thereafter the said Mortland began the erection and construction of a gasoline-filling, oil, air and water-station on the street, between the curb of the pavement and the foot or sidewalk thereon in front of the said Sands's lot. This space, together with the like space in front of the plaintiffs' lot, has heretofore been a grass-plot, not used by the general public as part of the traveled or cartway of the street. From the lot-line to the sidewalk it is four feet; the walk is six feet wide, and from the walk to the curb mentioned is twenty-two feet. The street is one hundred feet wide and thirty-six feet in the centre thereof, and bounded westerly by the said curb, is paved.

5. There have been put in place near the curb two gas-tanks of the capacity of 550 gallons each, with the tops thereof about three feet below the surface of the ground. Customary uprights, two in number, extending about eight feet above the cement foundation thereof, for the purpose of pumping and delivering gas, have been put in place, so located between the sidewalk and the curb (nine feet from the sidewalk and ten feet from the curb) that cars entering the station from the pavement may stop on either side thereof to receive gasoline.

6. Between the upright pumps mentioned several oil containers are to be located, while the upright for supplying air and water is located near the curb, so that delivery thereof can be made to cars on the pavement as well as to those inside the curb and upright. Several standards are to be erected, upon which are to be maintained electric lamps for the purpose of lighting the entire station.

7. No permission for the erection of the station was granted by the city authorities, but permission was granted by such authorities to cut down the curb so that cars may enter the station from the paved portion of the street and leave the same.

8. About twenty feet south of the south line of the Sands's lot there is a walk leading from the pavement and curb through to the north end of plaintiffs' porch, which is used by the plaintiffs and others for entrance from the street to the plaintiffs' home. The plaintiffs' residence is about twenty-five feet south of the line of Sands's lot. In the centre of the paved portion of the street there is a trolley line, and on the southerly portion of plaintiffs' lot, south of the residence, there is a driveway leading from the street pavement to their garage on the rear portion of their lot.

9. The headlights of cars entering the station from the paved street at night would necessarily at some point on the way strike the porch of plaintiffs' residence.

10. The plaintiffs' residence is on what is regarded as the main business and traveled street of the city, at about the dividing-line between the business and residential sections thereof.

11. The plaintiffs' house is about forty-five feet from the gasoline pumps, while the air and water-plugs are about twenty-five to thirty feet from the walk leading thereto from the curb.

12. About fifty feet north of the proposed station there is a gasoline station, known as Armour's, and about 220 feet south thereof is another, known as Keen's, neither so pretentious as the one proposed.

13. The defendant, The Empire Oil and Grease Company, has been furnishing and installing the pumps and equipment for the station and is to retain the title thereto until the same are paid for by W. W. Mortland.

14. The defendant, J. C. Mortland, is not interested in the installation, and there is no partnership known as The Franklin Battery and Filling Station, such name having been assumed by W. W. Mortland alone. The defendant, W. A. Sands, is not in any way a party to the installation except as the lessor of a portion of the same on the street.

15. The plaintiffs were not consulted relative to the installation of the station before work was commenced thereon. After the work was commenced, Mr. Feldman indicated to W. W. Mortland that he would enter no protest, but thereafter, after about $1500 had been invested in material and labor, he informed Mr. Mortland that he would object, and the pending proceeding for an injunction was commenced.

16. The location of the plaintiffs' residence is on the right-hand side of the street, going south, and the filling-station is located north of such residence.

17. There is evidence to the effect that the location of the station at the point mentioned would result in increasing the cost of insurance on plaintiffs' residence, and on the subject of the effect of the station on the value of plaintiffs' property the evidence is conflicting, with an apparent preponderance in favor of the view that it would depreciate the value of the property.

*Discussion.*

The construction, concerning which complaint is made, is being placed upon a public street of the City of Franklin, between the sidewalk and the curb of the paved cartway. That it is an obstruction which blocks and closes a considerable part of the street is palpable. By the terms of the Act of April 18, 1795, 3 Sm. Laws, 236, authorizing and directing the laying out of the town, now City of Franklin, the streets, lanes and the alleys thereof were reserved for public use and "shall be and forever remain common highways." So obstructing a public street and common highway, the construction may be regarded as a *public* nuisance. But conceding it to be such, and that at the instance of the proper parties it may be and should be abated, it does not follow that the same may be abated in this proceeding. To warrant an order so requiring, it is necessary that the plaintiffs show that they are about to suffer a material private injury over and above the general prejudice which may result to the public. "A private individual is entitled to an injunction against encroachments on or obstructions in a public road *when,* and *only when,* he is specially injured thereby and it is necessary to preserve his rights from irreparable injury:" 37 Cyc., 253; Blanchard *v.* Reyburn, 10 Phila. 427. On this subject it is said in Com. *v.* Kembel, 30 Pa. Superior Ct. 199-206: "The attempts of private citizens to check the tendency to encroach upon the highways have generally proved abortive, for it is a well-established rule that the private citizen who attempts to redress a public grievance must show a special damage to himself over his fellow-citizen, which is generally difficult."

Irreparable injury is the foundation for intervention by injunction; not irreparable because so small that it may not be estimated, but because likely

VOL. 6—4

Feldman et al. *v.* The Empire Oil and Grease Company et al.

to be so great as to be incapable of compensation in, damages. If the injury be doubtful, eventual or contingent, equity will not interfere by injunction: Rhodes *v.* Dunbar, 57 Pa. 274-286. Moreover, it must be such that an action at law for damages will lie on account thereof: Sparhawk *v.* Railway Co., 54 Pa. 401-428. It must be real as distinguished from something fanciful or fastidious. If, on account of the injuries sustained or likely to be sustained by reason of the erection of the station here complained of, the plaintiffs were to sue for damages, judging by the evidence educed at the hearing, the claim would be earnestly controverted and the recovery of substantial damages doubtful. An injunction should never issue in a doubtful case. They issue only in clear cases free of reasonable doubt and where there is a preponderating equity.

While sympathizing with the attitude of plaintiffs, it is difficult to conclude that the appropriate precedure has been adopted to remedy the objectionable things of which they complain. The State and city authorities should usually move in such cases, and when they do, the issue is not burdened by the embarrassing question of jurisdiction which so frequently arises when the proceeding is instituted by an individual. Such authorities not only should move, but may be required to do so. As stated in Dillon's Municipal Corporation (3rd ed.), § 931: "It is a clear principle of the English law that all corporations, municipal as well as private, which owe duties to the public, are liable to indictment for malfeasance, as well as non-feasance, in respect to such duties." Moreover, any person maintaining a structure in a public street or highway which constitutes a public nuisance is subject to indictment.

Various matters are referred to in the amended bill as constituting the injuries of which the plaintiffs complain. They complain of the contemplated lights near the front of their residence as interfering with the use of their porch, and that their view from the porch would be shut off by the station and the stoppage of motor-vehicles thereat. These must be regarded rather as fanciful than as real injuries. Lights in the street of a city are usually regarded as desirable rather than objectionable. Reference was made in the evidence to the fact that the headlights of vehicles would at some point, while entering the station, be thrown upon the porch. This would be for an instant only. The porch of every residence located on a corner lot in the city receives flashes of the light in like manner from all the cars turning in certain directions at such corner, but such fact has not been the subject of complaint nor regarded as rendering undesirable a residence on a corner lot.

Complaint is made that because of the proximity of the air and water-plugs to plaintiffs' property and the sidewalk leading to the main entrance to their house, the entrance thereto will be interfered with by automobiles. The location of the station with reference to plaintiffs' property, as hereinbefore found, is such that patrons of the station having been served would, it may properly be assumed, immediately pass on and there would be no occasion for stopping in front of or blocking the way leading to their house. Cars waiting for service would be lined along the curb north of the station and would in no way interfere with plaintiffs' egress to their house.

Another complaint is that the storage of gasoline at and the operation of the station will increase the hazard and expose plaintiffs' property to the damages of fire, decrease its value and increase the rate of fire insurance thereon. In the only cases in which these matters have been expressly considered and passed upon it has been held that they are not such injuries as will warrant the granting of an injunction. In the text of 20 Ruling Case Law, 479, it is stated: "The complaint must establish a case of serious mischief and not

Feldman et al. v. The Empire Oil and Grease Company et al.

mere trifling discomfort. Injunctions will not issue ordinarily when the effect of the nuisance is merely to reduce the value of the complainants' property or increase insurance rates." In Story's Equity, § 925, it is stated that mere diminution in the value of property, without irreparable mischief, will not furnish any foundation for equitable relief. The points now being considered were directly ruled in Rhodes v. Dunbar, 57 Pa. 274, where Thompson, J., after referring to other authorities, says: "That is to say, the mere diminution, irrespective of any direct damage, is not a ground for injunction. On this principle, the diminution, by reason of the increase of insurance, if it really exists, is no ground for the interference sought." It is common knowledge that the value of property frequently depends in a measure upon its surroundings. They may be such as to enhance its value and such also, while entirely lawful, as to decrease its value. The vending of gasoline is not an unlawful business and does not, in and of itself, constitute a nuisance.

It is true that in Prendergast v. Walls, 257 Pa. 547, the lower court, among a number of other reasons for granting an injunction, referred to the fact that the nuisance there complained of would increase the rates of insurance upon surrounding properties, and the judgment was affirmed by the Supreme Court without further comment on the findings and conclusions of the court below. The facts there involved were quite different from those here presented. They involved the operation and maintenance of a public garage with its attendant noises in a residential district, near to a parochial school and a church, and there is nothing in the case indicating an intention to overrule the express adjudication on the points referred to in Rhodes v. Dunbar, and it is not regarded as so doing.

The complaint that the location of the station near the plaintiffs' residence in a residential district will occasion the presence thereof of a large number of persons, employees and helpers, and that the operation of the same and the noises, dust and dirt occasioned thereby will deprive plaintiffs of the quiet, usual and ordinary enjoyment of their home, is not regarded as sustained by the evidence. As hereinbefore indicated and found, their residence is not located in a purely residential district. It is on the margin of the business section of the city. Such a station is very different from a public garage, and its operation is not accompanied by the pounding noises, stopping and parking of cars incident to the latter. While to a degree objectionable, such a station, as ordinarily conducted, and any odors arising therefrom cannot be regarded as the occasion of such irreparable injury to plaintiffs or their property as will warrant interference by injunction. Under the evidence, the odors of gasoline extend to a very limited area, and the operation of the station would not necessarily occasion noise except that resulting from the starting of cars, which it is not understood furnish grounds for equitable jurisdiction. A more serious ground of complaint by citizens generally is the unnecessary sounding of horns by inexperienced and some other drivers who announce their coming by a continued alarm, as if it was a matter of importance to the entire community or as if it were attended with all the dangers incident to the approach of a runaway horse or a mad dog. Not only the plaintiffs, however, but all suffer from the conduct of these. Reference has been made to McGuire v. Wilkes-Barre, 36 Pa. Superior Ct. 418, 421, where it is stated that a nuisance in a road may be abated by the proper officers or by a private citizen. A private citizen may institute a criminal prosecution on account of such a nuisance, and in order to reconcile the authorities, it must be held that such was the remedy of the private citizen referred to.

There is in the evidence nothing to warrant the conclusions that Mr. Feldman consented to the installation of this station. It was started without con-

Feldman et al. *v.* The Empire Oil and Grease Company et al.

sultation with him. Nor are the plaintiffs regarded as estopped by their delay in instituting their proceeding.

Without, therefore, to any degree approving the location of a filling station within the limits of a street or public highway, the conclusion is reached that the wrong, if it be such, is not one which, under the circumstances, can be remedied at the instance of a private individual.

### Legal conclusions.

Under the facts found, the plaintiffs have not and are not likely to suffer such private and irreparable injury, separable from and in addition to the public inconveniences, as to warrant the court in granting the relief, and, therefore, their bill of complaint must be dismissed.

### Order.

And now, Aug. 6, 1923, it is ordered that the foregoing findings and conclusions be filed and that the prothonotary enter a decree *nisi* in accordance therewith and give notice to the parties or their counsel.

### Decree nisi.

And now, Aug. 6, 1923, the above entitled cause having come on to be heard at this time, was argued by counsel, and, upon consideration thereof, it is ordered, adjudged and decreed that the plaintiffs' bill of complaint be dismissed. It is further ordered and adjudged that the plaintiffs pay the costs, except the fees of defendants' witnesses and the cost of subpœnaing same.

From George S. Criswell, Jr., Franklin, Pa.

NOTE.—Exceptions were filed in this case, which were subsequently abandoned.