# Mitchell et al. v. Guaranty Corporation et al., Appellants.

*Nuisance—Automobile service station—Public garage—Residential neighborhood—Equity—Evidence.*

1. A public service station, differing from a garage only in name, is not a nuisance per se, but becomes such in fact when conducted in a residential neighborhood.

2. Where business enterprises have so far invaded a residential locality as to substantially interfere with its quiet and cleanliness, it can no longer be classed as residential, but the test is as to the immediate neighborhood, and not remote districts.

3. Each case depends largely upon its own facts, and where they are of doubtful import, equity should not interfere.

4. The removal of eleven or twelve small residences to make way for the service station, is an evidential circumstance as to the residential character of a neighborhood.

5. In the case of a nuisance, the rear of a dwelling is as much entitled to protection as the front.

6. The fact that a service station will create a serious menace to school children, is a circumstance to be considered with others, as to whether it will be a nuisance.

7. The annoyances incident to the business of a public garage or public service station, regardless of its construction or operation, are such as to require its exclusion from a residential neighborhood.

8. The decree in such case will be confined to the operation of the station, and not the construction of the building.

Argued April 15, 1925. Appeal, No. 14, May T., 1925, by defendants, from decree of C. P. Dauphin Co., Equity Docket No. 773, on bill in equity, in case of Ehrman B. Mitchell et al. v. Guaranty Corporation and Gomery-Schwartz Motor Car Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill for injunction to restrain erection and maintenance of automobile sales and service station. Before McPHERSON, P. J., specially presiding.

The opinion of the Supreme Court states the facts. Decree for plaintiffs. Defendants appealed.

*Error assigned* was, inter alia, decree, quoting it.

*Robert T. McCracken* and *Spencer G. Nauman,* with them *Jesse E. B. Cunningham* and *Roberts & Montgomery,* for appellants.—Defendants' land is unrestricted and situate in the rear of a residential but in the midst of a growing business district.

An important and deciding factor in determining the character of the neighborhood which must not be overlooked is the fact that business is now moving north on Second Street: Phillips v. Donaldson, 269 Pa. 244.

The erection and operation of defendant's proposed sales and service station will not constitute an offensive business or a nuisance per se: Collins v. Iron Works, 227 Pa. 326; Krocker v. Planing Mill Co., 274 Pa. 143.

*John T. Brady,* with him *George Kunkel, Elmer E. Erb, Victor Braddock* and *John R. Geyer,* for appellees. —A district to be entitled to the peace and quiet incident to the character of the section in which it is located need not be exclusively residential, and plaintiffs have a right to protection against a nuisance: Tyson v. Coder, 83 Pa. Superior Ct. 116; Krocker v. Plaining Mill, 274 Pa. 143; Edmunds v. Duff, 280 Pa. 355; Prendergast v. Walls, 257 Pa. 547.

The construction and operation of defendants' proposed sales and service station will constitute a nuisance in fact: Slingluff v. Tyson, 280 Pa. 206.

OPINION BY MR. JUSTICE WALLING, May 4, 1925:

This was a bill in equity brought by property owners to restrain the erection and operation of an automobile sales and service station on a certain lot in the City of Harrisburg. The case was heard on bill, answer, replication and testimony; from the facts found thereon

a final decree was entered in due course granting plaintiffs the relief prayed for, and defendants have appealed.

A careful examination of the numerous assignments of error discloses no cause for reversal. Front Street extends along the east bank of the Susquehanna River and leading easterly from it to the Capitol grounds is a boulevard known as State Street, parallel to which and one block to the south is South Street and one block to the north is North Street. Midway between State and North streets and also extending from Front Street to the Capitol grounds is Liberty Street, of the width of thirty-three feet. Five hundred feet east of Front Street and, in a general course, parallel therewith, is Second Street. Buttonwood Street, of the width of twenty feet, extends from North Street to State Street, intersecting Liberty Street at a point one hundred and seven feet east of Front Street and one hundred and seventy feet south of North Street. Cedar Street, of the width of twenty feet, extending from North Street to Liberty Street, is eighty-seven and one-half feet east of Buttonwood Street, and parallel therewith. The land bounded on the north by North Street, on the east by Cedar Street, on the south by Liberty Street and on the west by Buttonwood Street, one hundred and seventy feet in length by eighty-seven and one-half feet in width, is owned by the Guaranty Corporation, defendant, and, thereon and coextensive therewith, it proposed to erect a one-story building for the use of its codefendant, the Gomery-Schwartz Motor Car Company, as a sales and service station, but was prevented by injunction in the instant case.

A public garage, from which a public service station differs only in name (Slingluff et al. v. Tyson, 280 Pa. 206), is not a nuisance per se, but becomes such in fact when conducted in a residential neighborhood: Prendergast et al. v. Walls et al., 257 Pa. 547; Slingluff et al. v. Tyson, supra; Hunter v. Wood, 277 Pa. 150; Phillips

et al. v. Donaldson, 269 Pa. 244; Hohl et al. v. Modell, 264 Pa. 516; Hibberd v. Edwards, 235 Pa. 454; Tyson et al. v. Coder, 83 Pa. Superior Ct. 116. Where business enterprises, however, have so far invaded a residential locality as to substantially interfere with its quiet and cleanliness, it can no longer be classed as residential; but the test is as to the immediate neighborhood and not remote districts: Krocker et al. v. Westmoreland Planing Mill Co., 274 Pa. 143. In the case just cited, we say (p. 146): "So long as the more remote industrial developments have not destroyed the quiet and cleanliness of plaintiffs' homes, they are entitled to protection from this immediate encroachment which does." Each case depends largely on its own facts and where they are of doubtful import equity should not interfere. In the instant case there is no room for doubt; Front Street is the most exclusively residential of any street in Harrisburg and the only places of business thereon are a silk mill on the north side of North Street and the city's water pumping station at the foot thereof, both of which have been there over fifty years and neither interferes with the quiet or cleanliness of the neighborhood. The other streets in the locality to which we have referred are also residential. The evidence is that the entire block enclosed by North, Second, State and Front streets has but one place of business, a small store on Second Street. The fact that, to make way for the proposed service station would require the removal of eleven or twelve small residences, is a circumstance as to the residential character of the neighborhood. True, the residences on Front Street, opposite the proposed service station, face the river, but the rear of a dwelling is as much entitled to protection as the front.

On Liberty Street across from defendant's property, and extending to State Street, are two churches and a parochial school, the latter having an average daily attendance of one hundred and forty pupils, from six to fourteen years of age, many of whom use Liberty Street,

as it is their most direct route to the entrance of the school building on Buttonwood Street. So, in addition to the noise, odors, etc., the service station would create a serious menace to the school children; in which and in other controlling features the case is parallel to Prendergast et al. v. Walls et al., supra.

The residential character of the locality is properly shown by the chancellor's 20th finding of fact, not assigned as error, as follows: "With the exception of the silk mill located on the upper side of North Street at Front, and the city pumping plant, located on the west side of Front Street at the foot of North Street, and the few other business locations above enumerated, the whole neighborhood in which the proposed building of defendants is situated is predominantly residential in character. On Front Street, in the immediate vicinity, and for many blocks both north and south thereof, are located some of the finest residences in the City of Harrisburg; State Street from Front to Second street is occupied solely by residences of a high standard and churches erected at great cost, and North, Liberty and Buttonwood streets in the vicinity, are likewise used for residential purposes, either through the occupancy of dwellings fronting on these streets or in connection with properties facing upon Front or State streets and extending through the block." As further indicating the character of the locality it may be stated that, in 1920, the operation of a public garage in this immediate neighborhood was restrained by the Court of Dauphin County. See Rhoads et al. v. Carr, 23 Dauphin Co. R., 204.

In the main, the business places to which appellant calls our attention are too remote from the locus in quo to be controlling. For example, the fact that Second Street, south of Pine Street and two blocks south of State Street is a business street is unavailing, as is the fact that there are private garages in the neighborhood in question. Doubtless defendants would construct and operate a modern up-to-date public service station, but

it would be a large building and accommodate approximately ninety cars with entrances on North and Liberty streets. It would have three departments, storage, sales and service. The defendant motor car company is the general sales agent of the Hudson-Essex cars and also of Stewart trucks. Extensive business would result, which would necessitate the passing in and out of numerous new automobiles and numerous old ones taken in exchange. The service department, while confined to minor repairs, would daily bring automobiles to the station, certain quantities of gasoline and oils would be used and there would be noises inseparable from the business. Smoke and fumes would be generated and although carried out of a stack twenty-four feet high would yet be offensive to the neighbors. The annoyances incident to the business of a public garage, or public service station, regardless of the manner of its construction or operation, are such as to require its exclusion from residential neighborhoods. The finding that the establishment of the proposed service station would cause a marked depreciation in the value of near-by property is amply supported by the evidence, as are the other findings contained in the exhaustive report of the chancellor. What is intended to be enjoined is the operation of the proposed service station, not the construction of the building.

The assignments of error are overruled and the decree is affirmed at the cost of appellants.