## Ladner et al. v. Siegel et al.

*Equity—Nuisance—Public garage—Residential neighborhood—Notice.*

1. A public garage in a residential neighborhood is a nuisance, regardless of its construction or operation.

2. Apartments are dwellings, just as much as individual houses.

3. Where it appears that a building is to be used as a public garage, open to the use of every one, it is immaterial that the owner may intend to use it primarily for the use of occupants of apartments which are to be built surrounding the garage.

4. A public garage in a residential district is a nuisance, whether it is a violation of a building restriction or an annoyance to the general neighborhood.

5. Where a preliminary injunction has issued against the use of a building as a public garage and not against its erection, the builders who proceed with the erection do so at their peril.

Bill in equity for injunction. C. P. No. 1, Phila. Co., June T., 1927, No. 9261.

*G. C. Ladner*, for plaintiffs; *W. B. Saul*, for defendants.

McDEVITT, P. J., March 30, 1928.—From the pleadings and the evidence produced at the trial of this cause, it was shown that the complainants are residents in the vicinity of 47th and Pine Streets, Philadelphia.

Complainants' houses are all located in a strictly residential district, and are all of substantial value.

The residential district in which these houses are erected extends from 49th Street on the west, a distance of four squares eastward to 45th Street, and from Locust Street on the north, a distance of seven squares southward to Cedar Avenue, in which area there are no commercial properties, public garages or shops of any description, with the exception of a drug store located at the northeast corner of 47th and Pine Streets, which is in the Garden Court Apartments, and in this district practically every home is occupied by the owner.

Defendant, Clarence R. Siegel, filed plans for the erection of a two-floor public garage, to be built to house over 400 cars, and broke ground for the erection thereof.

The defendant, F. W. Mark Construction Company, is the contractor who has been awarded the contract for the erection of said two-story public garage.

This building is situate about the middle of the block bounded by 47th Street, 48th Street, Pine Street and Spruce Street. It has a frontage of 120 feet on the north side of Pine Street and extends of that width northward 79 feet 6 inches, then widens to a width of 200 feet, and of that increased width extends northward 161 feet 5 inches. The entrance or passageway on Pine Street is about 65 feet in width, with stores on both sides of the passageway. The passageway in the middle and stores on both sides take up the full frontage of 120 feet.

Complainants, as soon as they learned of the intention of the defendant, Clarence R. Siegel, immediately caused notice to be sent to him, his attorney and his co-defendant, the Mark Construction Company, informing them that they objected to his erecting a public garage upon this ground, but defendant, Clarence R. Siegel, proceeded with the work and announced his intention to push the same to completion.

Whereupon complainants filed their bill in the present cause, praying for an injunction restraining defendants, Clarence R. Siegel and F. W. Mark Construction Company, from erecting the structure, building or garage aforesaid, or any building of that nature or character, upon said premises, and, further, from permitting or allowing any person to erect, maintain or use said building upon said land or any part thereof for the purposes described.

After hearing, a preliminary injunction issued, not against the erection, but against the use. Notwithstanding the notice, the filing of the bill and the granting of the preliminary injunction, the erection of the garage building was proceeded with. The mere fact that the defendants saw fit to expend a large sum of money in the face of the notice, the injunction and the decision of this court, as well as the numerous decisions of the Supreme Court, should entitle them to no extra consideration, and the case should be determined upon the facts as they stood at the time the bill was filed.

As to the right of the plaintiffs to injunctive relief under the general law of nuisance, it must now be regarded as settled law by at least ten decisions of the appellate courts, ranging from Prendergast v. Walls, 257 Pa. 547, to George et al. v. Goodovich et al., 288 Pa. 48, that the operation of a public garage in a residential neighborhood will be restrained, and that the Supreme Court intends no slackening of this most beneficial rule, designed for the protection of residential neighborhoods, is apparent from the very learned, discriminating opinion written by Mr. Justice Kephart in the recent case of Pennsylvania Co. et al. v. Sun Co., 290 Pa. 404, appearing in the Advance

Ladner et al. v. Siegel et al.

Reports of Friday, Nov. 18, 1927. In this case, Mr. Justice Kephart pointed out that there is a distinction between a trade or business which the law has determined under certain conditions to be a nuisance *per se* and such which become a nuisance merely from the matter of operation, and he points out on page 410:

"As illustrating a business that is perfectly lawful, becoming unlawful and a nuisance *per se* as in a certain locality, reference is made to those cases where it has been judicially determined that the business was unlawful near dwellings or in built-up sections.

"In Evans v. Fertilizing Co., *supra*, the manufacture of bone fertilizer near the home of a farmer was held to be a nuisance *per se* because noxious odors and offensive smells were inseparable from the manufacture. This circumstance was a fixed fact, the knowledge of it was common to everybody, the court could take judicial notice of it. The same was true of the use of property in a city as a livery stable (Houghton v. Kendrick, 285 Pa. 223) and a stockyard (Eckels v. Weibley, 232 Pa. 547) in a residential section; a public garage which is inseparable from the noise of pounding metals, noxious odors, racing motors and other affecting causes (Phillips v. Donaldson, 269 Pa. 244; Hibberd v. Edwards, 235 Pa. 454; Prendergast v. Walls, 257 Pa. 547); a sawmill in the same character of district (Krocker v. Westmoreland Planing Mill Co., 274 Pa. 143); an amusement park near dwellings, with its unfailing accompaniment of crowds, music and noise until late at night, and other detractions (Edmunds v. Duff, 280 Pa. 355); a powder-mill (Wier's Appeal, *supra*). All of these uses were held to possess inherent qualities which, as to a given locality, have been condemned by the courts as nuisances *per se*. In other words, though the business be lawful, as, for instance, a powder-mill in an outlying district (Dilworth's Appeal, 91 Pa. 247), it becomes unlawful because of location and surroundings."

The learned Justice then points out: "In all these cases, it must be apparent that an injunction was not granted on the ground of anticipated danger or an apprehension of it, but when the place and the act are admitted, it has been determined by the courts that certain unavoidable, inherent characteristics of the business injuriously affect health and property. In these cases, the averment of the act, or an attempt to perform it in a place forbidden, is all that is necessary."

In cases of this kind but two questions of fact are material for the determination of the court, and they are: First, is it located in a residential neighborhood? Secondly, is the proposed structure to be operated as a public garage? If both of these questions of fact are determined in the affirmative, then the injunction must necessarily follow.

There can be no serious dispute that the neighborhood immediately surrounding this proposed garage is of a strictly residential character. The distinction attempted to be made between a dwelling-house and apartments is hypercritical and unsatisfactory. Apartments are dwellings just as much as individual houses: Johnson v. Jones, 244 Pa. 386; Hamnett v. Born, 247 Pa. 418.

As to the other question, the intended use of the building to be erected as a public garage is not a subject of dispute. It is admitted by the defendants that it will be so used. It is intended to house and accommodate 429 cars. The testimony to the effect that it is intended primarily for the use of occupants of apartments which are to be built surrounding the garage does not alter the situation. Such apartment buildings are far in the future. With the testimony that there are 40,000 vacant apartments now in Philadelphia,

it is not likely that they will be erected for a long period of time, if ever erected, and until they are actually erected the defendants propose to garage the car of any one who applies. This case, it may here be interpolated, should be decided not on what the condition may be in the future, but what the condition was at the time the bill was filed.

In many cases the appellate courts of this State have held unswervingly to the principle that a public garage in a residential neighborhood is a nuisance, regardless of its construction or operation.

In Hibberd *v.* Edwards, 235 Pa. 454, the owner of a small garage on the Lancaster Pike, in the village of Paoli, commenced the erection of a large (46 feet by 70 feet) garage with six times the capacity of the one that he occupied. There was a restriction in the deed against offensive use, and an injunction was granted on the ground "that the garage was an offensive use."

In Prendergast *v.* Walls, 257 Pa. 547, a garage was attempted to be erected upon a lot at 38th and Chestnut Streets, free of building restrictions, within a short distance of valuable homes and a parochial school. It was enjoined by Court of Common Pleas No. 2 and the decree affirmed by the Supreme Court, irrespective of the fact that there were no building restrictions limiting the use of the lot. Since that case attempts to induce the Supreme Court to depart from its doctrine have proved unavailing, although in practically every case since it was attempted to be shown that the garage contemplated would be different from all others ever known and would be so arranged as to afford little, if any, annoyance to the surrounding neighborhood.

In Hohl *v.* Modell, 264 Pa. 516, the operation of a garage in a strictly residential neighborhood at the northeast corner of Lindley Avenue and Camac Street, Philadelphia, was again held to be "Contrary to the building restrictions prohibiting offensive use of the premises."

In Phillips *v.* Donaldson, 269 Pa. 244, the court below held that a garage was not an offensive use and, therefore, did not violate a building restriction upon property prohibiting offensive use. The Supreme Court used this significant language:

"A public garage has been determined to be a nuisance in a residential district, and this would be the case whether it was in violation of a building restriction or an annoyance to the general neighborhood: Prendergast *v.* Walls, 257 Pa. 547; Hibberd *v.* Edwards, 235 Pa. 454; Hohl *v.* Modell, 264 Pa. 516. But such a garage would not be a nuisance in a section devoted to business purposes.

"It is argued we should take judicial notice of the fact that in the operation of a public garage there exist such accompanying disturbances or other conditions as will make it obnoxious and a violation of the covenant, urging that, without proof of probable annoying conduct, it would be a nuisance in a residential neighborhood. Because of their extensive use, and the general knowledge of such use, we might be inclined to agree, but it is not necessary to so decide in the present case, for, under the facts overlooked by the chancellor, we find there is ample evidence to show the covenant would be violated by the operation of the proposed garage."

In Hunter *v.* Wood, 277 Pa. 150, the Supreme Court again upheld an injunction awarded to restrain the operation of a garage on property located on the Lancaster Pike, Wayne, Pennsylvania, as being an offensive use of the property, contrary to a building restriction. The building that the defendant erected was a showroom for the sale of automobiles and accessories, and the rear part a public garage and service station. The court held: "That a public garage in a residential neighborhood is a nuisance, regardless of the

violation of a restriction in the deed forbidding the use of the premises for offensive purposes or occupation."

It held, however, that where a neighborhood was in the transition stage from residential to business, nevertheless, the injunction should issue, as otherwise it would put the owner of the property in whose favor the restriction was placed upon the property in no better position than other persons in the locality not favored by the stipulation.

In this case, the Supreme Court points out that the same principles govern injunctions against the operation of garages, whether based upon restrictions in title or put upon general nuisance grounds, the only distinction being that where there is a restriction an injunction will go out, even though the neighborhood has changed, if an injunction would still be of substantial benefit to the party intended to be benefited.

The next case is Slingluff v. Tyson, 280 Pa. 206. This is an extremely important precedent. Its facts are greatly similar to the case at bar. In fact, the defendant in the Slingluff case presented a stronger case, as far as construction was concerned and intended use, than does the defendant in the case at bar. In the Slingluff case, there was no restriction in the deed. The plaintiffs were residents of West Main Street, Norristown, one of the finest residential districts in Norristown. The defendant planned to erect a service station on a lot 90 feet by 200 feet to an alley. The building was to be iron and concrete, 89½ feet by 100 feet. The front part of the building was to be used as a sales and showroom, *with no access from Main Street by automobile; all traffic to enter and leave the premises by the rear alley,* and vacant part of the lot to be used to accommodate cars brought in for inspection, adjustment and minor repairs. *No machinery of any kind to be installed or operated on the premises; neither gasoline nor oil stored or kept for sale. The premises were to be used solely: (1) sales and showroom, (2) as a service station for making minor repairs, adjustments and repairing imperfect parts on new Paige and Jewett machines and minor repairs on old machines. If extensive alterations or repairs were needed, the defendant proposed to send cars to another shop equipped for that purpose.* It was held: "Notwithstanding the attempt of the defendant to minimize the nuisance and even keep all traffic from the residential street, the garage was bound to be an inevitable nuisance," and injunction as granted by the court below was affirmed on appeal.

In the next case, Mitchell v. Guaranty Corp., 283 Pa. 361, there was no building restriction. This bill was brought to restrain the erection and operation of an automobile sales and service station in Harrisburg. Here, again, in affirming the injunction granted by the court below, the Supreme Court said: "A public garage, from which a public service station differs only in name (Slingluff v. Tyson, 280 Pa. 206), is not a nuisance *per se,* but becomes such in fact when conducted in a residential neighborhood (citing cases above noted, with the addition of Tyson v. Coder, 83 Pa. Superior Ct. 116). So long as the more remote industrial developments have not destroyed the quiet and cleanliness of plaintiffs' homes, they are entitled to protection from this immediate encroachment which does. Each case depends largely on its own facts, and where they are of doubtful import, equity should not interfere. In the instant case, there is no room for doubt. Front Street is the most exclusively residential of any street in Harrisburg, and the only places of business thereon are a silk-mill on the north side of North Street and the city's water pumping-station at the foot thereof, both of which have been there over fifty

years and neither interferes with the quiet or cleanliness of the neighborhood. The other streets in the locality to which we have referred are also residential.

"On Liberty Street, across from defendant's property and extending to State Street, are two churches and a parochial school, the latter having an average daily attendance of 140 pupils from six to fourteen years of age, many of whom must use Liberty Street as their most direct route to the entrance of the school building on Buttonwood Street. So, in addition to the noise, odors, etc., the service station would create a serious menace to the school children; in which, and in other controlling features, the case is parallel to Prendergast v. Walls, 257 Pa. 547.

"In the main, the business places to which appellant calls our attention are too remote from the *locus in quo* to be controlling. For example, the fact that Second Street, south of Pine Street and two blocks south of State Street, is a business street is unavailing, as is the fact that there are private garages in the neighborhood in question. Doubtless, defendants would construct and operate a modern up-to-date service station, but it would be a large building and accommodate ninety cars, with entrances on North and Liberty Streets.

"Smoke and fumes would be generated and, although carried out of a stack twenty-four feet high, would yet be offensive to the neighbors. The annoyances incident to the business of a public garage, or public service station, regardless of the manner of its construction or operation, are such as to require its exclusion from a residential neighborhood."

What the Supreme Court has thus recently said concerning a service station built to accommodate but ninety cars would be magnified and amplified when called upon to consider the defendants' proposed garage built to accommodate five times as many cars.

As to the menace to school children, the same potential menace exists here to a much larger degree, because the Henry C. Lea Public School and the West Philadelphia High School are attended by thousands, not merely hundreds, of children from tender years to high school age.

The next case is Tyson v. Coder, 83 Pa. Superior Ct. 116. In this case, the erection of a garage in an exclusively residential district in Huntingdon, Pennsylvania, was held to have been properly enjoined. The language of the lower court, Barnett, P. J., who specially presided, and which was approved by the Superior Court, is especially applicable to the case here.

"Although it is not purely residential, it is practically so. It contains no business establishment which seriously affects its safety, peace and quiet, which are the distinguishing characteristics of such a neighborhood. There can be no uncertainty, therefore, as to the application of the rule which seems to be now settled, that a public garage in a residential district is a nuisance. The defendant's plan, as outlined by him in his testimony, contemplated the construction and conduct of a garage in such manner as to eliminate, so far as possible, its offensive character. With ample means and best intentions, he might mitigate some of the annoyance incident to his business, but he could not hope entirely to overcome them. The rule, however, which excludes garages from residential sections is not restricted to such as are badly constructed and carelessly managed. It applies to all such establishments in such communities.

"If the plaintiffs are to be protected by law from successive encroachment upon their enjoyment of accustomed quiet of their homes, the remedies must be applied now.".

Ladner et al. *v.* Siegel et al.

Finally, we come to the case of George *v.* Goodovich et al., 288 Pa. 48. It is unnecessary to comment upon this case further than to say it shows no indication on the part of the Supreme Court to retrace its steps or to permit the wholesome rule adopted by them that a garage in a residential neighborhood is a nuisance to be frittered away by exceptions, in which the nuisance can be said to vary only in degree and not in principle. .

As to defendants' argument relating to character of construction and care to reduce nuisances, this is the same contention that has been made by every defendant in every one of the cases cited, which contention was brushed aside by the Supreme Court in the case of Mitchell *v.* Guaranty Corp., 283 Pa. 361, on page 366, with the statement that "the annoyances incident to the business of a public garage or public service station, regardless of its construction or operation, are such as to require its exclusion from a residential neighborhood."

As pointed out by Mr. Justice Kephart in the recent case of Pennsylvania Co. *v.* Sun Co., 290 Pa. 410: "The common experience of mankind, of which the courts take judicial notice, has found in certain localities and surroundings certain pursuits to be universally injurious to health and damaging to property, no matter how carefully conducted. Such pursuits are, in given places, nuisances *per se.*"

Under the authorities above cited and quoted, the conclusion is inescapable that the use of defendants' garage would be a nuisance *per se.*

The exceptions having been dismissed, the injunction is made permanent.