### Ladner et al. v. Siegel, Appellant.

Argued December 18, 1928.

Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Ira Jewell Williams,* of *Brown & Williams,* and with him *Saul, Ewing, Remick & Saul,* for appellant. —Allowing tenants of an apartment house to store their cars in a garage does not amount to operating a public garage: George v. Goodovich, 288 Pa. 48; Carney v. Penn Oil Co., 291 Pa. 371.

*Grover C. Ladner,* for appellees.—Permitting the tenants of an apartment house to use a building to store their cars is in violation of an injunction forbidding the use of the building as a public garage: Mitchell v. Guaranty Company, 283 Pa. 361; Slingluff v. Tyson, 280 Pa. 206; Taylor v. Lambert, 279 Pa. 514.

OPINION BY GAWTHROP, J., January 25, 1929:

This is an appeal by the defendant, Siegel, from an order of the court below adjudging him guilty of contempt of court and imposing on him a fine of $500 for violation of a decree in equity entered against him and William A. Anderson, enjoining them from maintaining and operating a certain garage building, in a residential district, as a "public garage." This decree was affirmed by the Supreme Court May 18, 1928. (Ladner v. Siegel, 293 Pa. 306.)

The appellant and Anderson are the owners of the block bounded by Forty-seventh, Forty-eighth, Spruce and Pine Streets, in the City of Philadelphia, in the center of which they have erected a garage building rising one story above the ground with a basement beneath. The 120-foot frontage is on the north side of Pine Street, and consists of a 65-foot entrance way, with stores on each side. Just inside there is a vestibule extending to the north toward Spruce Street for about 80 feet, and furnishing sufficient room to accommodate 25 cars. From the rear of this extends the larger part of the building having a width of 200 feet and a depth of 161 feet. Space has been provided for the handling of 429 cars.

After the final decree in the court below was affirmed by the Supreme Court, the appellant and Anderson filed a petition in the court below asking for a declaratory judgment. The court was asked to say whether the leasing of space in the garage to the tenants of Garden Court Apartments, owned by

Siegel, situate on the east side of Forty-seventh Street and facing the block of land on which the garage is built, would amount to the use of the building as a public garage in violation of the injunction. The common pleas answered the question in the affirmative. On appeal to the Supreme Court that tribunal held in an opinion filed November 26, 1928, that the Declaratory Judgment Act of 1923 was not intended to be used to elucidate judicial decrees as there proposed, and reversed the judgment and directed the dismissal of the petition. In its opinion that court said: "If petitioners believe the operation intended to be unobjectionable under the order made, they may proceed at their own risk. Until this is done, the court is in no position to determine the exact facts involved, and whether defendants have violated the injunction issued against the maintenance of a 'public garage' or whether in fact a 'private nuisance' has been created, a question not discussed in the original proceeding." This the appellant did by leasing a part of the garage building consisting of about one third of the main floor, and accommodating about 70 automobiles, to the Garden Court Apartments, a corporation controlled by him, under a lease which provides that under no circumstances shall the building be occupied or used as a public garage.

The Garden Court Apartments took possession of this portion of the building under its lease and made arrangements with its tenants to store their cars therein. Approximately twenty-two cars were being stored in the leased portion of the building when the order now appealed from was made. Defendants were selling gasoline and oil on the premises, not to the public, however, but only to persons storing their cars in the garage. The above facts appear by the petition for attachment and the answer filed thereto. The court below refused an offer by the appellant to

prove that the use made of the building was "without any annoyance or nuisance." He stated: "I will take the position that it is a nuisance per se so long as it is a public garage in a residential neighborhood and let you go up on that," and that "if the garage is to be used by the tenants of the Garden Court Apartments until the disposition of the question in the appellate court, then I am going to commit your client for contempt of court. You can either suffer a fine and take your appeal from that, and close your garage in the meantime, or I will commit your client for contempt. Will you accept the fine and stop using the garage?" Counsel for appellant agreed to "accept a fine and stop."

The sole question presented in this appeal is whether or not the use of the garage building, which the appellant has permitted, amounts to a violation by him of the injunction against its use as a "public garage." The answer involves the legal distinction between a "private" and a "public" garage. Just what constitutes a "public" as distinguished from a "private" garage has not been decided by the Supreme Court or this court. Without attempting a comprehensive definition of the term "public garage," by which its distinction from a "private garage" could be determined in all circumstances, we think that a "public garage" is generally understood to be a place where the business of storing or rendering service for automobiles for the public is conducted. We cannot adopt the view of the court below that a public garage is "one used for the storage of cars other than those belonging to the owner or lessee of the particular building." We have no doubt that this definition of a "public garage" is much too comprehensive. Under such a rule the owner of an apartment house maintaining a garage on the rear of his lot solely and exclusively for the storage of the cars of himself and his tenants would be held as a matter of law to be

maintaining a public garage. We regard such a garage "private" as distinguished from "public," and even if it were conducted in a residential district its operation could not be enjoined as a nuisance without proof of the fact. The private character of the garage in such a case is established by the fact that neither the general public nor any considerable portion thereof, qua public, is accommodated by it. If the owner of an apartment house has no garage on the lot on which his building stands, but leases a building across the street for the purpose of housing the cars of himself and his tenants and no others, would the use of the building for that purpose alone constitute it a "public garage?" We think that it would not. Or even if the owner of one hundred separate houses built on contiguous lots without separate garages leased a building for the storage of the cars of his tenants and no others, would the building for that purpose constitute it a public garage? Still our answer is "no." The action of the appellant, for which he was adjudged in contempt and fined, differs little from the examples just stated. True he was not the sole owner of the Garden Court Apartments, but they were owned and operated by a corporation of which he owns all the stock and which he operates. The lease which he made of space in the garage building merely enabled the corporation to accommodate its tenants with garage facilities. It contains the express covenant that the building shall not be used as a public garage. We agree with counsel for the appellant that the situation is exactly the same in principle as if the appellant was the sole owner of the apartment house and the garage. The use made of the garage has been only by the tenants of the apartment house and they may use it only so long as they remain tenants. In no sense is this a use of the building as a "public garage." The use

is private and exclusive and neither the public generally nor any considerable portion thereof, qua public, have been or may be served.

It has been held by the Supreme Court that the fact that the service rendered at a sales and service station was confined exclusively to owners of a particular make of cars, which are used extensively by the public, does not destroy the public character of the business: Slingluff v. Tyson, 280 Pa. 206. In that case, however, the service was to the public, qua public, any person operating a Paige car being entitled to service. Clearly it was a case for the application of the rule that a public garage in a residential section is a nuisance per se. After the most deliberate consideration, we have reached the conclusion that the use which the appellant has permitted to be made of his building was a "private" and not a "public" use. It follows that the question whether the use made of the building was an actual nuisance is not involved in the present proceeding. The question of actual nuisance was not involved in the original equity proceeding, because the defendants admitted their intention to operate the building as a public garage. Its operation as such, only, was enjoined. The error into which we think the court below fell was that he confused what he regarded as the inevitable objectionable results of the use of the building established as constituting a "public" garage. He seems to have lost sight of the fact that a "private garage may be operated in such manner and on so large a scale that the annoyance and disturbance resulting therefrom to residents in the vicinity may be fully as great or even greater than would result from the operation of a small public garage at the same place," but that in the case of a private garage the question, "whether such business is an offensive one or a nuisance in the neighborhood, is one of fact depending upon all the circumstances of the case":

George v. Goodovich, 288 Pa. 48. This conclusion is supported by the opinion of the learned chancellor, in which he says: "It surely cannot be that the building, when used as a garage by others, becomes unobjectionable because the use is limited to a class. The objectionable feature of a public garage results not from the personnel of those who use it, but rather from the gathering together of a large number of cars under one roof, the accumulation of fumes and the multiplication of the noises and starting and driving cars in and out of one entrance during all hours of the night." The question before the chancellor was a narrow one, to wit: Had the appellant violated the injunction against using the building as a public garage? If he had not, the order adjudging the appellant in contempt of his former decree was error. The fact that he was permitting a nuisance to be committed by the use of the building as a private garage was no valid basis for the order. After the most deliberate consideration of the brief and argument of the able counsel for the appellees, we have been able to find no warrant for the order appealed from. To the contention that the question, whether or not the use made of the garage building amounts to a violation of the injunction, is flatly ruled in the affirmative by the decision in George v. Goodovich, supra, we deem it sufficient to say that the garage, the use of which was enjoined in that case, was a private garage and there was proof of nuisance in fact.

Mitchell v. Guaranty Corp., 283 Pa. 361, was a case in which the erection and maintenance of an automobile sales and service station, a public garage, was enjoined.

Lambert v. Taylor, 279 Pa. 517, cited as authority for the proposition that the use of the garage by the tenants of the apartment house is not a private use, does not support it. That case decided that a build-

ing restriction forbidding the erection of a building "designed for any other purpose than a private dwelling house," was violated by the erection of an apartment house; that an apartment house is not strictly a private dwelling but a place for a number of people grouped in families assigned to different parts of the same structure. This is far from holding that an apartment house is a public place.

The order is reversed and the petition and rule to show cause why an attachment for contempt should not be issued are discharged at the cost of appellees.